**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| JAMES DONALD YEOMANS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 1:16-cv-00455-BL |
| | ) | |
| JOHN Q. HAMM, | ) | |
| Commissioner, Alabama | ) | |
| Department of Corrections, | ) | |
| | ) | |
| Respondent. | ) | |

**RESPONDENT'S BRIEF IN OPPOSITION TO YEOMANS'S BRIEF
<u>IN SUPPORT OF HABEAS PETITION</u>**

Steve Marshall
*Attorney General*

Jordan Shelton
*Assistant Attorney General*
*Counsel for Respondent*

State of Alabama
Office of the Attorney General
501 Washington Avenue
Montgomery, Alabama 36130-0152
Tel: (334) 353-1779
Jordan.Shelton@AlabamaAG.gov

November 20, 2025

**TABLE OF CONTENTS**

TABLE OF CONTENTS ....................................................................................... ii

TABLE OF AUTHORITIES ................................................................................ iv

PRELIMINARY STATEMENT ............................................................................ 1

ARGUMENT ....................................................................................................... 1

I.    *Loper Bright* has no bearing on section 2254(d)'s
      constitutionality. ...................................................................................... 1

    A. *Loper Bright* is clearly limited to administrative law. ............................. 2

    B. Section 2254(d) does not abrogate Article III power to
       determine federal law. .......................................................................... 5

    C. Yeomans must satisfy AEDPA's standard of review to secure
       relief. ..................................................................................................... 9

II.   Yeomans is not entitled to relief on his claim that his death
      sentence violates *Atkins v. Virginia* .................................................... 11

    A. Yeomans's *Atkins* claim contains supplemental allegations
       which are unexhausted and procedurally defaulted from
       review. .................................................................................................. 12

    B. AEDPA bars Yeomans's attempt to relitigate his *Atkins* claim ............... 15

        1. The ACCA's decision is not contrary to or based on an
           unreasonable application of *Atkins*. ........................................... 18

        2. The ACCA's decision is not based on an unreasonable
           determination of the facts considering the evidence in the
           state-court record. ......................................................................... 20

    C. Yeomans is not entitled to an evidentiary hearing. ................................ 24

CONCLUSION ................................................................................................. 29

CERTIFICATE OF SERVICE ............................................................................ 30

**TABLE OF AUTHORITIES**

**Cases**

*Anderson v. Sec'y, Fla. Dep't of Corr.*,
752 F.3d 881 (11th Cir. 2014)..............................................................................20

*Andrew v. White*,
604 U.S. 86 (2025) ...............................................................................................10

*Atkins v. Virginia*,
536 U.S. 304 (2002) ..........................................................................................1, 18

*Bates v. Sec'y, Fla. Dep't of Corr.*,
No.25-12588, 2025 WL 2305211 (11th Cir. Aug. 1, 2025)...................................2

*Bobby v. Bies*,
556 U.S. 825 (2009) .............................................................................................22

*Borden v. Allen*,
646 F.3d 785 (11th Cir. 2011).............................................................................13

*Broadnax v. Lumpkin*,
987 F.3d 400 (5th Cir. 2021)...............................................................................27

*Brown v. Davenport*,
596 U.S. 118 (2022)...............................................................................................9

*Brumfield v. Cain*,
576 U.S. 305 (2015) ........................................................................................19, 24

*Burgess v. Comm'r, Ala. Dep't of Corr.*,
723 F.3d 1308 (11th Cir. 2013)........................................................................22, 28

*Burt v. Titlow*,
571 U.S. 12 (2013) .............................................................................................5, 16

*Carroll v. Sec'y, Dep't of Corr.*,
574 F.3d 1354 (11th Cir. 2009).........................................................................22

*Case of Sewing Mach. Co.*,
  85 U.S. (18 Wall.) 553 (1874)..................................................................................8

*Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*,
  467 U.S. 837 (1984) ...............................................................................................2, 3

*Cobb v. Thaler*,
  682 F.3d 364 (5th Cir. 2012)..................................................................... 5, 8, 9, 10

*Crater v. Galaza*,
  491 F.3d 1119 (9th Cir. 2007)..................................................................................6

*Cullen v. Pinholster*,
  563 U.S. 170 (2011)..................................................................................... 17, 27

*Davis v. Guerrero*,
  No. 3:21-CV-2333, 2025 WL 2553446 (N.D. Tex. Sept. 5, 2025)............ 3, 4, 5, 9

*Demirdjian v. Gipson*,
  832 F.3d 1060 (9th Cir. 2016)..................................................................................7

*Dill v. Allen*,
  488 F.3d 1344 (11th Cir. 2007)..............................................................................17

*Dunn v. Reeves*,
  594 U.S. 731 (2021) ...............................................................................................14

*Evans v. Thompson*,
  518 F.3d 1 (1st Cir. 2008) ........................................................................................6

*Ex parte Perkins*,
  851 So. 2d 453 (Ala. 2002) ....................................................................................18

*Felker v. Turpin*,
  518 U.S. 651 (1996) .................................................................................................8

*Ferguson v. Comm'r Ala. Dep't of Corr.*,
  69 F.4th 1243 (11th Cir. 2023)...............................................................................20

*Ferguson v. Sec'y, Fla. Dep't of Corr.*,
716 F.3d 1315 (11th Cir. 2013) ...............................................................16

*Freeman v. Comm'r, Ala. Dep't of Corr.*,
46 F.4th 1193 (11th Cir. 2022).................................................................13

*Green v. French*,
143 F.3d 865 (4th Cir. 1998)......................................................................8

*Green v. Sec'y, Dep't of Corr.*,
28 F.4th 1089 (11th Cir. 2022)..................................................................12

*Hannon v. Sec'y, Dep't of Corr.*,
562 F.3d 1146 (11th Cir. 2009)..................................................................17

*Harrington v. Richter*,
562 U.S. 86 (2011)............................................................. 7, 16, 26, 27

*Holsey v. Warden, Ga. Diagnostic Prison*,
694 F.3d 1230 (11th Cir. 2012) .................................................................17

*Jackson v. Marshall*,
864 F.3d 1 (1st Cir. 2017) ........................................................................26

*Jenkins v. Comm'r, Ala. Dep't of Corr.*,
963 F.3d 1248 (11th Cir. 2020)............................................ 14, 19, 21, 23, 25, 27

*Kane v. Garcia Espitia*,
546 U.S. 9 (2005) ........................................................................................8

*Kelley v. Sec'y for Dep't. of Corr.*,
377 F.3d 1317 (11th Cir. 2004)............................................................ 13, 14, 25

*Kilgore v. Sec'y, Fla. Dep't of Corr.*,
805 F.3d 1301 (11th Cir. 2015)..................................................................15

*Landers v. Warden*,
776 F.3d 1288 (11th Cir. 2015)................................................................ 26, 27

*Lee v. Comm'r, Ala. Dep't of Corr.*,
   726 F.3d 1172 (11th Cir. 2013) ......................................................................... 16, 20

*Lockyer v. Andrade*,
   538 U.S. 63 (2003) .............................................................................................19

*Loggins v. Thomas*,
   654 F.3d 1204 (11th Cir. 2011) ..........................................................................17

*Loper Bright Enterprises v. Raimondo*,
   603 U.S. 369 (2024) ...................................................................................... 1, 3, 4

*Miles v. Floyd*,
   No. 24-1096, 2025 WL 902800 (6th Cir. Mar. 25, 2025) .............................. 2, 3, 4

*Moore v. Texas*,
   581 U.S. 1 (2017) ...............................................................................................19

*Palmore v. United States*,
   411 U.S. 389 (1973) .............................................................................................7

*Piper v. Jackley*,
   5:20-CV-05074, 2025 WL 889374 (D. S.D. Mar. 21, 2025) ......................... 3, 5, 9

*Plaut v. Spendthrift Farm, Inc.*,
   514 U.S. 211 (1995) .............................................................................................8

*Pope v. Sec'y, Fla. Dep't of Corr.*,
   752 F.3d 1254 (11th Cir. 2014) ..........................................................................26

*Raulerson v. Warden*,
   928 F.3d 987 (11th Cir. 2019) ............................................................................16

*Renico v. Lett*,
   559 U.S. 766 (2010) ...........................................................................................15

*Schriro v. Landrigan*,
   550 U.S. 465 (2007) ...........................................................................................17

*Schriro v. Summerlin*,
   542 U.S. 348 (2004) .................................................................................19

*Shinn v. Kayer*,
   592 U.S. 111 (2020). ...............................................................................16

*Shinn v. Ramirez*,
   142 S. Ct. 1718 (2022)..............................................................................28

*Shoop v. Twyford*,
   596 U.S. 811 (2022) .................................................................................25

*Smith v. Campbell*,
   620 F. App'x 734 (11th Cir. 2015)...........................................................20

*Smith v. Thornell*,
   No. CV-12-00318, 2025 WL 563453 (D. Ariz. Feb. 20, 2025).............3, 4, 5, 11

*Sockwell v. Comm'r, Ala. Dep't of Corr.*,
   141 F.4th 1231 (11th Cir. 2025)...............................................................10

*Sosniak v. Macon SP Warden*,
   No. 23-11667, 2025 WL 1833646 (11th Cir. July 3, 2025)......................10

*Stallworth v. Raybon*,
   No. 1:15-cv-00309, 2025 WL 223447 (S.D. Ala. Jan. 16, 2025) ............24

*Stallworth v. Warden, Holman Correctional Facility*,
   No. 25-10417 (11th Cir. 2025)................................................................24

*Strickland v. Washington*,
   466 U.S. 668 (1984) ...................................................................................1

*Williams v. Florida Department of Corrections*,
   No. 24-10479, 2025 WL 2674581 (11th Cir. Sept. 18, 2025).................10

*Williams v. Taylor*,
   529 U.S. 362 (2000) ........................................................................6, 11, 28

*Yeomans v. State*,
   898 So. 2d 878 (Ala. Crim. App. 2004) ..................................... 18, 19, 20, 21, 23

**Statutes**
28 U.S.C. § 2254(d)(1)..................................................................................... 14, 20
28 U.S.C. § 2254(d)(1–2) ....................................................................................26
U.S. Const. art. III, § 1 .......................................................................................7

**Other Authorities**
F. Andrew Hessick, *Remedial Chevron*, 97 N.C. L. Rev. 1, 16 (2018) ................3, 4

**Rules**
Rule 32.2(a)(4), Ala. R. Crim. P ..........................................................................14

ix

**PRELIMINARY STATEMENT**

Pursuant to this Court's order of May 29, 2025, (Doc. 31), the Respondent in the above-styled cause, John Q. Hamm, Commissioner of the Alabama Department of Corrections, by and through the Attorney General for the State of Alabama (hereinafter "the State"), submits this supplemental brief in response to Yeomans's brief in support of his habeas petition. (Doc. 40.) The purpose of this brief is to aid in the disposal of Yeomans's habeas petition, and the State fully incorporates its answer filed on October 24, 2016. (Doc. 13.) Yeomans is not entitled to habeas relief.

**ARGUMENT**

**I.    *Loper Bright* has no bearing on section 2254(d)'s constitutionality**.

In his supplemental brief, Yeomans argues that this Court should decline to defer to the Alabama state courts because the Supreme Court's decision in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), made AEDPA's limitations on federal habeas review unconstitutional. (Doc. 40 at 1.) He claims that *Loper Bright*'s mandate that federal judges independently interpret the law extends to this Court's review of his claims for federal habeas relief and, therefore, this Court should, at a minimum, grant an evidentiary hearing before resolving his *Atkins v. Virginia*, 536 U.S. 304 (2002) claim or his *Strickland v. Washington*, 466 U.S. 668 (1984), claim. (Doc. 40 at 2–8.) Not only are his arguments unpersuasive, but also federal district courts have already rejected the same calls to end AEDPA's deferential standard for

habeas review. *Loper Bright*'s elimination of *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), deference did not affect the constitutionality of AEDPA, and this Court should continue to defer to the Alabama state court's decisions.

Recently, the Eleventh Circuit denied a certificate of appealability on this issue in *Bates v. Sec'y, Fla. Dep't of Corr.,* No.25-12588, 2025 WL 2305211, Not Reported in Fed. Rptr. (11th Cir. Aug. 1, 2025). The court held that "the district court's decision here–specifically, its rejection of Bates's argument that *Loper Bright* has rendered AEDPA deference unconstitutional–is not debatable." *Bates*, 2025 WL 2305211, at *1. Finding that the Supreme Court's decision in *Loper Bright* is an interpretation of the Administrative Procedure Act (APA) and not the Constitution, the court found that "[t]o the extent that the Court discussed the Constitution at all in *Loper Bright*, it did so only to provide historical background for the general principle that Article III courts must 'exercise their judgment independent of influence from the political branches.'" *Id*. Bates was "mistaken that *Loper Bright* rendered AEDPA deference unconstitutional," *id.*, and Yeomans is too.

### A.    *Loper Bright* is clearly limited to administrative law.

As an initial matter, "*Loper Bright* does not address AEDPA or AEDPA deference." *Miles v. Floyd*, No. 24-1096, 2025 WL 902800, at *3 (6th Cir. Mar. 25, 2025). Instead, the case involved two groups of commercial fishermen who

challenged a federal rule that required them to pay for third-party observers on their boats when a government observer was unavailable. *Loper Bright*, 603 U.S. at 380–82. The Court used *Loper Bright* to overrule the "judicially created doctrine of deference to agency rule-making that it had recognized in *Chevron*." *Davis v. Guerrero*, No. 3:21-CV-2333, 2025 WL 2553446, at \*11 (N.D. Tex. Sept. 5, 2025). The *Chevron* deference doctrine previously required federal courts to defer to a federal agency's reasonable interpretation of a statute that was "silent or ambiguous with respect to the specific issue at hand." *Chevron*, 467 U.S. at 843. "Now, 'courts must exercise their independent judgment when deciding whether an agency has acted within its statutory authority,' as required by the [APA]." *Miles*, 2025 WL 902800, at \*3 (quoting *Loper Bright*, 603 U.S. at 379–80).

*Loper Bright* had everything to do with the language of the APA and its holding is narrow. *Smith v. Thornell*, No. CV-12-00318, 2025 WL 563453, at \*4 (D. Ariz. Feb. 20, 2025) (finding the holding in *Loper Bright* was based on the language of the APA); *Piper v. Jackley*, 5:20-CV-05074, 2025 WL 889374, at \*16-18 (D. S.D. Mar. 21, 2025) (slip copy) (concluding the *Loper Bright* Court held that the deference required by *Chevron* could not be reconciled with the APA's command that a reviewing court decide all relevant questions of law). The APA calls for courts to conduct a de novo review of agency actions, including agency statutory interpretations, but *Chevron*'s standard was much more lenient and largely ignored

the APA. *See Loper Bright*, 603 U.S. at 397 (noting that the Court crafted the second *Chevron* prong without mentioning the APA or acknowledging the doctrinal shift). "*Loper Bright* did not hold that all statutory limits on federal judicial review, including AEDPA, violate Article III or the separation of powers." *Smith*, 2025 WL 563453, at \*4. "Moreover, given the majority's express reliance in *Loper Bright* on the language of the APA as determinative on the issue before it, its discussion of the historical tradition of the primacy of judicial review on issues of law, as opposed to fact, is rendered little more than *obiter dictum*." *Davis*, 2025 WL 2553446, at \*13.

Additionally, *Chevron* deference to executive branch officials fundamentally differs from deference to final judgments under section 2254(d). Unlike Section 2254(d), *Chevron* deference was "not a remedial doctrine." F. Andrew Hessick, *Remedial Chevron*, 97 N.C. L. Rev. 1, 16 (2018). And deference to executive branch officials—who lack special competence to interpret statutes—has no historical analogue. *Loper Bright*, 603 U.S. at 386-91 ("Nothing in the New Deal era or before it thus resembled the deference rule the Court would begin applying decades later to all varieties of agency interpretations of statutes."); *id.* at 400-01.

To the contrary, "AEDPA deference allows federal courts to show respect to the role that state courts play in resolving state criminal cases." *Miles*, 2025 WL 902800, at \*3. A federal district court's ability to issue a writ of habeas corpus is limited because it respects our system of dual sovereignty. *Davis*, 2025 WL

4

2553446, at *8. The Court has reasoned that

> [T]he States possess sovereignty concurrent with that of the Federal Government, subject only to limitations imposed by the Supremacy Clause. Under this system of dual sovereignty, [the Supreme Court] consistently held that state courts have inherent authority, and are thus presumptively competent, to adjudicate claims arising under the laws of the United States.

*Burt v. Titlow*, 571 U.S. 12, 19 (2013) (quoting *Tafflin v. Levitt*, 493 U.S. 455, 458 (1990)). State courts have always been regarded as competent forums for adjudicating federal constitutional issues, and "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt*, 571 U.S. at 16.  Accordingly, "a state court's decision on a constitutional claim . . . bears little resemblance to a federal agency's interpretation of a statute, and a federal court's deference to the former under the AEDPA bears no resemblance to the *Chevron* deference rejected in *Loper Bright*." *Smith*, 2025 WL 563453, at *5. *Loper Bright* therefore has no bearing on Yeomans's habeas petition.

### B. Section 2254(d) does not abrogate Article III power to determine federal law.

Although section 2254(d) limits habeas relief, "it does not prohibit federal judges from interpreting the law independently." *Piper*, 2025 WL 889374, at *17. In fact, courts have repeatedly rejected claims that section 2254(d) eliminates federal courts' power to "say what the law is." *See Cobb v. Thaler*, 682 F.3d 364, 374 (5th Cir. 2012) (finding that section 2254(d)(1) "does not intrude on the independent

5

adjudicative authority of the federal courts. Rather, it limits the grounds on which federal courts may grant the habeas remedy to upset a state conviction.”); *Evans v. Thompson*, 518 F.3d 1, 11 (1st Cir. 2008) (“There is a world of difference between telling a court how to decide a case given a certain set of facts and limiting the availability of relief *after* a judge interpedently determines the existence of a right and the reach of Supreme Court precedent.”); *Crater v. Galaza*, 491 F.3d 1119, 1128 (9th Cir. 2007) (“Section 2254(d)(1) does not restrict the federal courts’ power to interpret the law, but only sets standards for what state court errors of law require federal habeas relief.”).

In *Williams v. Taylor*, the Supreme Court interpreted section 2254(d) and, despite its awareness of the same constitutional argument raised here,[1] concluded that “federal courts, *even on habeas*, have an independent obligation to say what the law is.” 529 U.S. 362, 411 (2000) (emphasis added). *Williams* acknowledged that

---

[1] Although *Williams* addressed the statutory construction of AEDPA, the Court also reasoned that

> [a] construction of AEDPA that would require the federal courts to cede this authority to the courts of the States would be inconsistent with the practice that federal judges have traditionally followed in discharging their duties under Article III of the Constitution. If Congress had intended to require such an important change in the exercise of our jurisdiction, we believe it would have spoken with much greater clarity than is found in the text of AEDPA.

529 U.S. at 379.

"2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for writ of habeas corpus with respect to claims adjudicated on the merits in state court" because state-court decisions can be tested only against "clearly established Federal Law, as determined by the Supreme Court of the United States," or if the state-court decision is "contrary to, or involved an unreasonable application of," that clearly established law. *Id.* at 412–13. However, "2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). The difficult standard imposed by section 2254(d) is not an impossible one. *See Demirdjian v. Gipson*, 832 F.3d 1060, 1077 (9th Cir. 2016) (Noonan, J., dissenting).

Accordingly, there is no Article III problem in restricting the scope of federal habeas relief by imposing a deferential, difficult-to-meet standard of review. Article III vests "[t]he judicial Power of the United States … in one Supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish." U.S. Const. art. III, § 1. Whether to create "inferior federal courts, as well as the task of defining their jurisdiction, was left to the discretion of Congress." *Palmore v. United States*, 411 U.S. 389, 400-01 (1973); s*ee also Case of Sewing Mach. Co.*, 85

U.S. (18 Wall.) 553, 578 (1874) ("[T]he distribution of the subjects of jurisdiction among such inferior courts as Congress may from time to time ordain and establish, within the scope of the judicial power, always [has] been, and of right must be the work of the Congress."). Article III protects the judiciary's "deeply rooted" powers. *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 218 (1995).

The Supreme Court has "long recognized that 'the power to award the writ … must be given by written law,'" so "judgments about the proper scope of the writ are 'normally for Congress to make.'" *Felker v. Turpin*, 518 U.S. 651, 664 (1996). Section 2254(d) is just that—a "condition for federal habeas relief." *Kane v. Garcia Espitia*, 546 U.S. 9, 10 (2005) (per curiam). Congress is free to define the availability of a federal remedy. Doing so "does not limit any inferior federal court's independent interpretive authority to determine the meaning of federal law in any Article III case or controversy." *Green v. French*, 143 F.3d 865, 874-75 (4th Cir. 1998).

The distinction between rights and remedies is fundamental, and "AEDPA is hardly unique . . . in limiting the availability of a remedy even for aggrieved individuals who may have legitimate federal constitutional claims." *Cobb*, 682 F.3d at 375. Many federal remedies come with standards of proof or standards of review that limit their availability but do not infringe on the judicial power or any underlying right. The plain error doctrine, the harmless error rule, and the qualified immunity

8

shield can all similarly prevent meritorious claims from securing relief. *See id.* ("In short, federal courts routinely deny relief even for known constitutional violations."). Yet, the court remains free to "say what the law is" and *then* apply the proper standard to determine whether the plaintiff or petitioner is entitled to relief. The habeas context is no different; AEDPA merely sets criteria for awarding relief. *Loper Bright* does not undermine this rights/remedies distinction. *Piper*, 2025 WL 889374, at *18.

### C.      Yeomans must satisfy AEDPA's standard of review to secure relief.

Unlike the judicially created legal doctrine at issue in *Chevron* and *Loper Bright*, AEDPA "defines 'the statutory authority of federal courts to issue habeas corpus relief for persons in state custody.'" *Cobb*, 682 F.3d at 372 (quoting *Premo v. Moore*, 562 U.S. 115, 120 (2011). "The only reason this [C]ourt has any authority to entertain [Yeomans's] federal habeas corpus petition is that Congress has enacted statutes, currently codified at Title 28 United States Code Subsections 2241(a) and 2254(a), which authorizes federal district courts to grant the writ of habeas corpus to prisoners held in custody by the States." *Davis*, 2025 WL 2553446, at *7. Historically, federal review of challenges to state convictions has always been limited, *see Brown v. Davenport*, 596 U.S. 118, 127–28 (2022), and AEDPA was meant to further limit the scope of review, not broaden it. "AEDPA prohibits federal habeas relief for any claim adjudicated on the merits in state court, unless one of the

9

exceptions listed in § 2254(d) obtains." *Cobb*, 682 F.3d at 372 (quoting *Premo*, 562 U.S. at 120).

Post-*Loper Bright*, courts around the country have continued to apply 2254(d) without questioning its constitutionality. For instance, the Supreme Court applied 2254(d) just seven months after *Loper Bright*, and the Eleventh Circuit has repeatedly implemented AEDPA's difficult standards of review this year. *See Andrew v. White*, 604 U.S. 86, 92–93 (2025) (finding that Andrew properly identified clearly established federal law for the purposes of AEDPA); *Williams v. Florida Department of Corrections*, No. 24-10479, 2025 WL 2674581, at *1, Not Reported in Fed. Rptr. (11th Cir. Sept. 18, 2025) ("[W]e review the district court's decision de novo but review the state post-conviction court's decision with deference."); *Sosniak v. Macon SP Warden*, No. 23-11667, 2025 WL 1833646, at *4, Not Reported in Fed. Rptr. (11th Cir. July 3, 2025) ("When a state court has denied a habeas petition on the merits, our review is subject to the 'highly deferential standards' of the Antiterrorism and Effective Death Penalty Act."); *Sockwell v. Comm'r, Ala. Dep't of Corr.*, 141 F.4th 1231, 1237 (11th Cir. 2025) ("AEDPA generally establishes a 'highly deferential' standard for reviewing a state court's *Batson* rulings.").

Because 2254(d) is a lawful restriction on this Court's remedial power, this Court must adhere to its limitations. That includes section 2254(e)(2) which "prohibits an evidentiary hearing to develop the relevant claims in federal court,

10

unless the statute's other stringent requirements are met." *Williams*, 529 U.S. at 437. The Court cannot grant relief unless Yeomans shows that Alabama courts unreasonably applied clearly established law or unreasonably determined the facts considering the state court record. To answer that question, the Court may not consider evidence produced at an evidentiary hearing. *Id*. ("Federal court sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings."). For these reasons, "*Loper Bright* is an intervening change in law, but not one that implicates [Yeomans's] habeas proceedings." *Smith*, 2025 WL 563453, at *6.

## II. Yeomans is not entitled to relief on his claim that his death sentence violates *Atkins v. Virginia*.

In his supplemental brief, Yeomans argues that the state court's denial of his *Atkins* claim based on a pre-*Atkins* record was an unreasonable determination of the facts and an unreasonable application of *Atkins*. (Doc. 40 at 8–25.) Yeomans claims that his pre-*Atkins* record is sufficient to find him intellectually disabled but also asks this Court to grant an evidentiary hearing so he may develop a post-*Atkins* record. (Doc. 40 at 8–25.) However, the Alabama Court of Criminal Appeals' decision that Yeomans is not intellectually disabled was not contrary to or an unreasonable application of *Atkins*, nor was it based on an unreasonable determination of the facts considering the evidence in the state-court record. Fairminded jurists could agree with the state court's conclusions, and Yeomans is due no relief.

11

### A.    Yeomans's *Atkins* claim contains supplemental allegations which are unexhausted and procedurally defaulted from review.

As a critical threshold matter, many of the facts and arguments supporting Yeomans's claim that he has significantly subaverage intellectual functioning that manifested before the age of eighteen were not fairly presented to the state courts. Yeomans alleges in his habeas petition that his "subaverage intellectual functioning becomes even more clear when the standard adjustments made by the profession to those raw scores are applied." (Doc. 1 ¶ 52.) He then applies the standard error of measurement (SEM) of plus or minus five points to each of his five IQ scores. (Doc. 1 ¶ 52.) Yeomans goes on to include that his "low scores do not account for the Flynn Effect," which, he says, "requires correcting raw IQ scores by first adjusting downward, prior to additional SEM adjustment, by 0.33 points for every year between an IQ test's standardization and the date of testing." (Doc. 1 ¶ 53.) Applying adjustment for the Flynn effect, Yeomans asserts at least four out of his five scores are within a range indicating significantly subaverage intellectual functioning. (Doc. 1 ¶ 53.) Yeomans did not present any of these factual allegations and arguments to the state courts on direct appeal or in his state postconviction petition.

"[A]ny federal claims presented to a district court in a habeas petition from a state prisoner must have first been exhausted in the state court system." *Green v. Sec'y, Dep't of Corr.*, 28 F.4th 1089, 1128–29 (11th Cir. 2022).  "To the extent the claims are not the same—in terms of their legal theory and facts on which they rest—

12

as the claims exhausted in the state courts, the federal court will treat the claims as unexhausted." *Id.* at 1129 (cleaned up); *see also Freeman v. Comm'r, Ala. Dep't of Corr.*, 46 F.4th 1193, 1223 (11th Cir. 2022) ("And while Freeman now raises additional allegations in support of his claim, 'we do not consider such supplemental allegations ... when reviewing the reasonableness of the state court's resolution of this claim, which was based on the allegations before it,' in accordance with AEDPA.") (quoting *Powell v. Allen*, 602 F.3d 1263, 1273 n.8 (11th Cir. 2010)); *Borden v. Allen*, 646 F.3d 785, 816 (11th Cir. 2011) ("[W]e believe that a review of a state court adjudication on the merits in light of allegations not presented to the state court—for example, by examining additional facts or claims presented for the first time in a petitioner's federal habeas petition—would insufficiently respect the 'historic and still vital relation of mutual respect and common purpose existing between the States and the federal courts.'") (quoting *Williams*, 529 U.S. at 436).

Though the Eleventh Circuit has stated that claims in a federal habeas petition are not required to be "carbon copies" of the claims presented to the state courts, *Kelley v. Sec'y for Dep't. of Corr.*, 377 F.3d 1317, 1344 (11th Cir. 2004), Yeomans's supplemental allegations fundamentally alter the substance of his claim. Yeomans not only provides new adjustments to his original IQ scores but also asks this Court to interpret the evidence differently. (Doc. 1 ¶ 53 "[H]is second-highest score derives from a test that had been made obsolete by a revised standardization."). Offering the

13

Court a new basis from which to determine whether Yeomans has significantly subaverage intellectual functioning is not a factual elaboration; it is a complete refashioning of the claim. *See Kelley*, 377 F.3d at 1344 ("[T]he prohibition against raising nonexhausted claims in federal court extends not only to broad legal theories of relief, but also to the specific assertions of fact that might support relief.").

Additionally, because Yeomans did not present the SEM and Flynn effect allegations to the state courts, those courts did not have a full and fair opportunity to consider them. *See Jenkins v. Comm'r, Ala. Dep't of Corr.*, 963 F.3d 1248, 1276–77 (11th Cir. 2020) (holding that Jenkins was procedurally barred from raising the Flynn Effect issue in his federal habeas petition because he did not raise it in the Alabama state courts). Because Yeomans's SEM and Flynn effect allegations are unexhausted and procedurally defaulted, he must establish cause and prejudice; however, "[Yeomans] cannot establish prejudice from being barred from asserting this claim now because the Supreme Court has not 'clearly established' that a court must consider the Flynn effect in assessing intellectual disability." *Jenkins*, 963 F.3d at 1277; *see* § 2254(d)(1). Notably, the Supreme Court describes the "so-called Flynn Effect" as a "controversial theory." *Dunn v. Reeves*, 594 U.S. 731, 736 (2021).

Finally, in his answer, Respondent argued that Yeomans's *Atkins* claim is procedurally defaulted because the state postconviction court found that it was barred under Rule 32.2(a)(4), Ala. R. Crim. P., as it was raised and addressed on

14

direct appeal. (Doc. 13 ¶ 13.) Respondent no longer advances that argument. Instead, Yeomans's *Atkins* claim was adjudicated on the merits in state court, and this Court should defer to the state court's decision that he is not intellectually disabled.

### B.    AEDPA bars Yeomans's attempt to relitigate his *Atkins* claim.

AEDPA "imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (cleaned up). A habeas petitioner is not entitled to relief on any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim:

> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

Clearly established federal law "is the governing legal principle or principles set forth by the Supreme Court *at the time* the state court renders its decision." *Kilgore v. Sec'y, Fla. Dep't of Corr.*, 805 F.3d 1301, 1310 (11th Cir. 2015). "A state court decision involves an 'unreasonable application' of clearly established federal law if the state court correctly identifies the governing legal principle from the

15

relevant Supreme Court decisions but unreasonably applies it to the facts of the particular case." *Lee v. Comm'r, Ala. Dep't of Corr.*, 726 F.3d 1172, 1192 (11th Cir. 2013) (cleaned up). "A state court decision is 'contrary to' clearly established federal law if it applies a rule that contradicts the governing law set forth by the United States Supreme Court, or arrives at a result that differs from Supreme Court precedent when faced with materially indistinguishable facts." *Ferguson v. Sec'y, Fla. Dep't of Corr.*, 716 F.3d 1315, 1331 (11th Cir. 2013).

To satisfy the unreasonable-application standard, a federal habeas petitioner "must show far more than that the state court's decision was 'merely wrong' or 'even clear error.'" *Shinn v. Kayer*, 592 U.S. 111, 118 (2020). Instead, the petitioner must demonstrate that "the state court's decision is so obviously wrong that its error lies 'beyond any possibility for fairminded disagreement.'" *Id.* (quoting *Richter*, 562 U.S. at 103). "A state court's application of federal law is unreasonable only if no fairminded jurist could agree with the state court's determination or conclusion." *Raulerson v. Warden*, 928 F.3d 987, 995 (11th Cir. 2019) (cleaned up).

"[W]hen a federal habeas petitioner challenges the factual basis for a prior state-court decision rejecting a claim, the federal court may overturn the state court's decision only if it was 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Burt*, 571 U.S. at 18 (quoting § 2254(d)(2)). A state court's "determination of the facts is unreasonable

16

only if no fairminded jurist could agree with the state court's determination or conclusion." *Holsey v. Warden, Ga. Diagnostic Prison*, 694 F.3d 1230, 1257 (11th Cir. 2012).

If a state inmate's claim was adjudicated on the merits in state court, then federal habeas review is limited to the state-court record. *Cullen v. Pinholster*, 563 U.S. 170, 181-82 (2011). "AEDPA also requires federal habeas courts to presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'" *Schriro v. Landrigan*, 550 U.S. 465, 473-74 (2007); *see also Dill v. Allen*, 488 F.3d 1344, 1354 (11th Cir. 2007) ("AEDPA codifies a presumption that the factual findings of state courts are correct, which may be rebutted only by clear and convincing evidence."). "This presumption applies to fact findings made by both state trial courts and state appellate courts." *Hannon v. Sec'y, Dep't of Corr.*, 562 F.3d 1146, 1150 (11th Cir. 2009); *see also Loggins v. Thomas*, 654 F.3d 1204, 1217 (11th Cir. 2011) ("[Federal habeas courts] accord AEDPA deference not only to the adjudications of state appellate courts but also to those of state trial courts that have not been overturned on appeal."). The record is sufficient to determine that the ACCA acted reasonably when it concluded that Yeomans failed to satisfy *Atkins*.

### 1.    The ACCA's decision is not contrary to or based on an unreasonable application of *Atkins*.

The Supreme Court determined in *Atkins* that the execution of offenders who are intellectually disabled violates the Eighth Amendment. 536 U.S. at 321. In Alabama,

> [A] defendant, to be considered mentally retarded, must have significantly subaverage intellectual functioning (an IQ of 70 or below), and significant or substantial deficits in adaptive behavior. Additionally, these problems must have manifested themselves during the developmental period (i.e., before the defendant reached 18).

*Ex parte Perkins*, 851 So. 2d 453, 456 (Ala. 2002). Yeomans has failed to establish that the ACCA's decision that he is not intellectually disabled was contrary to or an unreasonable application of *Atkins*.

Yeomans asserts that the ACCA's decision that he is not intellectually disabled was contrary to, or involved an unreasonable application of *Atkins* because the state court placed undue weight on his two higher IQ scores and focused on his adaptive strengths and ignored his deficits. (Doc. 40 at 19–21.) However, the ACCA correctly considered *Atkins*'s definition of mental retardation and followed the *Perkins* standard for assessing the three components of an intellectual disability claim. *See Yeomans*, 898 So. 2d at 901.

Moreover, "clearly established Federal law" according to section 2254(d)(1) means "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71–

18

72 (2003). The ACCA issued its decision in 2004, and the Alabama Supreme Court denied certiorari in 2005. *Yeomans*, 898 So. 2d at 882. Therefore, Yeomans can only rely on Supreme Court decisions in place at the time the Alabama state courts decided his *Atkins* claim. *See Moore v. Texas*, 581 U.S. 1 (2017); *Brumfield v. Cain*, 576 U.S. 305 (2015). The exception is later-issued opinions that set out new substantive rules. *Schriro v. Summerlin*, 542 U.S. 348, 351–352 (2004). Yeomans argues that the ACCA's focus on his adaptive strengths was a "textbook unreasonable application of *Atkins*, as explained in *Moore*." (Doc. 40 at 21.) However, he concedes that *Moore* is not a new substantive rule. (Doc. 40 at 21.) Thus, he acknowledges that *Moore* cannot be used in assessing the reasonableness of the Alabama courts' 2004 and 2005 decisions.

Additionally, as discussed herein, "[Yeomans] is not retroactively entitled to have the state courts take into account the margin of error of the IQ test." *Jenkins*, 963 F.3d at 1276. And "neither [district courts] nor the Alabama Supreme Court nor the U.S. Supreme Court have said that a court *must* consider [the Flynn Effect] in order to reasonably apply *Atkins*." *Id.* Additionally, though Yeomans would gladly have this Court discredit his two highest scores, AEDPA denies federal courts the license to impose their own evidentiary frameworks for evaluating IQ tests. There is nothing improper about relying on scores obtained on tests that a revised version has since superseded. This Court has regularly relied on the administration of "outdated"

19

IQ tests. *See e.g., Ferguson v. Comm'r Ala. Dep't of Corr.*, 69 F.4th 1243, 1251 (11th Cir. 2023); *Anderson v. Sec'y, Fla. Dep't of Corr.*, 752 F.3d 881, 891 n.25 (11th Cir. 2014); *Lee v. Comm'r, Ala. Dep't of Corr.*, 726 F.3d 1172, 1181 (11th Cir. 2013); *Smith v. Campbell*, 620 F. App'x 734, 738, 740 (11th Cir. 2015). Therefore, the ACCA's decision was not contrary to, or an unreasonable application of *Atkins*. 28 U.S.C. § 2254(d)(1).

## 2. The ACCA's decision is not based on an unreasonable determination of the facts considering the evidence in the state-court record.

Yeomans argues that the ACCA's decision was based on an unreasonable determination of the facts in light of the evidence presented in state court because the evidence demonstrates that he has significantly subaverage intellectual functioning and that he has substantial deficits in adaptive behavior that manifested before the age of eighteen. (Doc 40 at 15–22.) However, the ACCA reasonably considered the evidence in the record, and this Court should defer to its findings.

The ACCA found that Yeomans was administered the Stanford Binet Intelligence test at 7 years old which resulted in a 67 IQ score. *Yeomans*, 898 So. 2d at 901. At age 9, he was administered the Wechsler Intelligence Scale for Children and scored an 83. *Id.* Again, Yeomans was given the Stanford Binet Intelligence test when he was 11 years old which resulted in a 78 IQ score. *Id.* at 902. Finally, at age 17, he scored a 72 on the Wechsler Adult Intelligence Scale. *Id.* at 901. Dr. D'Errico,

20

a psychologist and certified forensic examiner, testified that he reviewed Yeomans's school records, which included his psychological reports of intellectual assessments. *Id.* at 902. Dr. D'Errico determined that Yeomans was not intellectually disabled. *Id.*

As to his adaptive functioning, "*Atkins* elaborated that the adaptive-skill component of intellectual disability requires substantial present limitation in at least two of the following areas: 'communication, self-care, home living, social skills, community use, self-direction, health and safety, functional academics, leisure, and work.'" *Jenkins*, 963 F.3d at 1277 (quoting *Atkins*, 536 U.S. at n.3). Yeomans argues that the record demonstrates replete examples of adaptive deficits in functional academics and communication. (Doc. 40 at 17.) However, the record supports a finding that "Yeomans did not manifest significant deficits in his adaptive behavior." *Yeomans*, 898 So. 2d at 902.

Though the record likely shows that Yeomans was "limited" in functional academics, the record supports the ACCA's determination that he did not have significant deficits in his adaptive behavior. The state court considered that Yeomans was placed in special education classes throughout his academic career, that his family thought he was of low IQ, and that he could not read or write; however, these facts alone do not show a *substantial* deficit. *Id.* Moreover, the evidence at trial indicated that Yeomans did not manifest significant deficits in any of the remaining areas as he was "steadily employed, he married more than once, fathered and raised

21

several children, and . . . he tried to teach his children right from wrong." *Id.* These findings, which are presumed correct under § 2254(e)(1), are reasonable determinations of the facts in light of the evidence in the state-court record.

Yeomans also argues that this Court should not rely on evidence that was developed pre-*Atkins* in resolving his *Atkins* claim. (Doc. 40 at 12–15.) However, pre-*Atkins* evidence will be conducive to an *Atkins* inquiry in many cases. *See Burgess v. Comm'r, Ala. Dep't of Corr.*, 723 F.3d 1308, 1317 (11th Cir. 2013) ("[E]vidence presented pre-Atkins, *may not* in *every* case be conducive to an *Atkins* inquiry and *may not* enable a court to make reasonable factual determinations." (emphasis added)); *Carroll v. Sec'y, Dep't of Corr.*, 574 F.3d 1354, 1366 (11th Cir. 2009) (rejecting "argument that *federal law* requires state courts to conduct evidentiary hearings on every claim of mental retardation—especially in cases, such as" this one, "in which a petitioner has presented evidence regarding his mental health in…prior proceedings"). True, *Atkins* distinguished "[m]ental retardation as a mitigator and mental retardation under *Atkins*," *Bobby v. Bies*, 556 U.S. 825, 836 (2009); however, that distinction speaks to the strategic *uses* of the evidence, not the *reliability* of evidence obtained prior to *Atkins*. *Id*. And it is certainly not *unreasonable* for state courts to decide an *Atkins* claim on pre-*Atkins* evidence. To hold otherwise would create a per se rule requiring evidentiary hearings for all habeas petitioners who were convicted pre-*Atkins* no matter the evidence in the state-

22

court record.

In *Jenkins*, a decision released since Respondent's initial answer in 2016, the Eleventh Circuit affirmed the district court's denial of Jenkins's *Atkins* claim. 963 F.3d at 1273. *Atkins* was issued during the pendency of Jenkins's Rule 32 appeal, and the ACCA ordered supplemental briefing on the *Atkins* issue. *Id.* at 1262. "Jenkins asked the court to stay the proceedings and conduct an evidentiary hearing after the Alabama legislature enacted a statute about executing the mentally retarded or, in the alternative, to vacate his sentence and remand after the Alabama legislature acted." *Id.* "The appeals court proceeded to reject Jenkins's *Atkins* claim on the merits because the record established that his IQ was 76 and that he maintained relationships and employment." *Id.* The district court found, and the Eleventh Circuit affirmed, that Jenkins was not intellectually disabled based on the pre-*Atkins* evidence in the state-court record. *Id.* at 1262, 1273–79.

This is a case, like *Jenkins*, where the evidence in the state-court record refutes the petitioner's *Atkins* claim. For starters, Yeomans's theory at trial was that he was intellectually disabled, therefore, he did not act with the same level of criminal culpability of those deserving the death penalty. *See Yeomans v. State*, 898 So. 2d 878, 900 (Ala. Crim. App. 2004) ("Evidence and testimony about Yeomans's level of intellectual functioning was presented at trial, and defense counsel argued that Yeomans's low level of intellectual functioning was a mitigating factor."); *see also*

23

*Brumfield v. Cain*, 576 U.S. 305, 321–22 (2015) (finding an evidentiary hearing could be warranted when defense's trial strategy was to shift the focus away from any diagnosis of intellectual disability). The circuit court and the ACCA had evidence of Yeomans's IQ scores, school reports, employment history, family background, and his ability to function as a normal member of society. *Id.* at 901–02.

Moreover, Yeomans's reliance on *Stallworth v. Raybon* is misplaced because the district court's decision was wrong. No. 1:15-cv-00309, 2025 WL 223447, at *1 (S.D. Ala. Jan. 16, 2025). Stallworth's *Atkins* claim was raised and rejected by the state courts on direct appeal, but the district court refused to give proper deference to the Alabama state courts in violation of AEDPA. *Id.* The State's appeal of the district court's order granting habeas relief is currently pending in the Eleventh Circuit. *See Stallworth v. Warden, Holman Correctional Facility*, No. 25-10417 (11th Cir. 2025). And in any event, Yeomans has concrete IQ scores and unequivocal testimony about his functioning presented in the context of his alleged intellectual disability. He has not shown and cannot show that the ACCA's decision was based on an unreasonable determination of the facts in light of the evidence in the state-court record.

## C.   Yeomans is not entitled to an evidentiary hearing.

Yeomans claims that, at a minimum, he is entitled to an evidentiary hearing

24

so he can develop an *Atkins* record. (Doc. 40 at 22–24.) However, because Yeomans has failed to show that the state courts' adjudication of his *Atkins* claim was contrary to or involved an unreasonable application of clearly established federal law or was based on an unreasonable determination of the facts, this Court may not grant his request for an evidentiary hearing. Additionally, Yeomans is not entitled to an evidentiary hearing because he was not diligent in developing the factual basis of his claim in state court.

AEDPA "restricts the ability of a federal habeas court to develop and consider new evidence." *Shoop v. Twyford*, 596 U.S. 811, 819 (2022); *see also Kelley*, 377 F.3d at 1337 ("AEDPA expressly limits the extent to which hearings are permissible, not merely the extent to which they are required."). "Consistent with AEDPA," a federal court must "determine at the outset whether the new evidence sought could be lawfully considered." *Id.* at 821. For that reason, federal courts "must consider that statute's requirements before facilitating the development of new evidence." *Id.* at 822.

"[A] § 2254 petitioner is precluded from receiving an evidentiary hearing in the district court on a claim that was adjudicated on the merits by a state court, unless he *first* demonstrates an entitlement to relief under § 2254(d)." *Jenkins*, 963 F.3d at 1278 n.16. Under that provision, a federal court may not grant habeas relief on "any claim that was adjudicated on the merits in State court" unless the state court's

adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §§ 2254(d)(1–2). "By its terms § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exemptions in §§ 2254(d)(1) and (d)(2)." *Richter*, 562 U.S. at 98.

"Review of factual determinations under § 2254(d) is expressly limited to 'the evidence presented in the State court proceeding.'" *Shoop*, 596 U.S. at 820. "[R]eview of legal claims under § 2254(d)(1) is also 'limited to the record that was before the state court.'" *Id.* (quoting *Pinholster*, 563 U.S. at 181). Simply put, "a federal court must determine whether a habeas petitioner has satisfied § 2254(d) based only on the 'record that was before the state court that adjudicated the claim on the merits.'" *Pope v. Sec'y, Fla. Dep't of Corr.*, 752 F.3d 1254, 1262 (11th Cir. 2014) (quoting *Pinholster*, 563 U.S. at 181).

If a habeas petitioner cannot "demonstrate a clearly established federal-law error or an unreasonable determination of fact on the part of the state court, based solely on the state record," he "can neither attain habeas relief nor an evidentiary hearing." *Landers v. Warden*, 776 F.3d 1288, 1295, 1299 (11th Cir. 2015); *see also Jackson v. Marshall*, 864 F.3d 1, 14 (1st Cir. 2017) ("If the state court does

26

adjudicate a petitioner's claims on the merits, and he cannot clear the hurdle of §

2254(d) based on the record that was before the state court, an evidentiary hearing

is not allowed.").

Where a habeas petitioner demonstrates that the state court's adjudication of

his claim was objectively unreasonable and, thereby, "clears § 2254(d)'s hurdles,"

he may be entitled to an evidentiary hearing, "provided that an evidentiary hearing

is not otherwise barred by the limitations set forth in § 2254(e)." *Jenkins*, 963 F.3d

at 1278 n.16; *see also Broadnax v. Lumpkin*, 987 F.3d 400, 407 (5th Cir. 2021) ("If

the petitioner succeeds in satisfying this threshold requirement, then a federal habeas

court may entertain new evidence pursuant to the limitations of § 2254(e)(2).").

"Section 2254(e)(2) continues to have force where § 2254(d)(1) [or (d)(2)] does not

bar federal habeas relief." *Pinholster*, 563 U.S. at 185.

As discussed above in Section II(B), Yeomans failed to show that "the state

court's ruling on the claim being presented in federal court was so lacking in

justification that there was an error well understood and comprehended in existing

law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103.

Because Yeomans failed to satisfy his burden of showing that the ACCA's

adjudication of his claim was objectively unreasonable, he "can neither attain habeas

relief nor an evidentiary hearing." *Landers*, 776 F.3d at 1299.

Even assuming, arguendo, that Yeomans satisfied his burden under section

2254(d), which he has not and cannot, he is not entitled to a hearing on his *Atkins* claim because he failed to make diligent efforts to develop the factual basis of his claim in state court. Section "2254(e)(2) prohibits a district court from holding an evidentiary hearing on a claim if the petitioner has failed to develop the factual basis of that claim in state court, absent certain narrow circumstances." *Burgess,* 723 F.3d at 1319. "[A] failure to develop the factual basis of a claim is not established unless there is a lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." *Williams*, 529 U.S. at 432. "A prisoner is at fault if he bears responsibility for the failure to develop the record." *Shinn v. Ramirez*, 142 S. Ct. 1718, 1734 (2022) (cleaned up).

Yeomans raised his *Atkins* claim in his amended brief on direct appeal. Yet, he did not ask the ACCA to remand the case for an evidentiary hearing in light of the *Atkins* decision. Habeas Checklist, Vol. 9. In his application for rehearing, Yeomans asserted that he was ineligible for the death penalty under *Atkins*, but he did not request an evidentiary hearing or argue that the ACCA's decision was unreasonable for considering the record without an *Atkins* hearing. Habeas Checklist, Vol. 10. In his Rule 32 petition, Yeomans again raised his *Atkins* claim; however, he simply made a blanket request for a hearing on all claims raised in his petition. Habeas Checklist, Vol. 14. Yeomans was not diligent in seeking to develop the factual basis for his *Atkins* claim in state court. Therefore, even if Yeomans could

28

overcome the hurdle of section 2254(d), he is not entitled to an evidentiary hearing.

## CONCLUSION

For these reasons and for those set forth in Respondent's answer, (Doc. 13), Yeomans's petition for habeas relief should be denied.

Respectfully submitted,

Steve Marshall
*Attorney General*

**/s/ Jordan Shelton**
Jordan Shelton
*Assistant Attorney General*

Counsel for Respondent

## CERTIFICATE OF SERVICE

I hereby certify that on November 20, 2025, I electronically filed the foregoing

with the Clerk of the Court using the CM/ECF system, which will send notification

of this filing to all counsel of record.

**/s/ Jordan Shelton**
Jordan Shelton
*Assistant Attorney General*

ADDRESS OF COUNSEL:

Office of the Attorney General
Capital Litigation Division
501 Washington Avenue
Montgomery, Alabama 36130
(334) 353-1779 Office
E-mail: Jordan.Shelton@AlabamaAG.gov

30