**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| JAMES DONALD YEOMANS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 1:16-cv-00455-BWL |
| | ) | |
| JOHN Q. HAMM, Commissioner of the | ) | |
| Alabama Department of Corrections, | ) | |
| | ) | |
| Respondent. | ) | |

**PETITIONER JAMES DONALD YEOMANS'S REPLY BRIEF
IN SUPPORT OF HABEAS PETITION**

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

ARGUMENT .................................................................................................................. 1

I.    THE ALABAMA STATE COURTS UNREASONABLY DETERMINED MR YEOMANS'S INTELLECTUAL DISABILITY ON A PRE-ATKINS RECORD, RENDERING HIS SENTENCE UNCONSTITUTIONAL AND ENTITLING HIM TO AN EVIDENTIARY HEARING. ........................................ 1

    A.    The Alabama State Courts' Decisions Rested on Unreasonable Applications of Law and Unreasonable Determinations of the Facts Under Atkins. ............................................................................... 3

    B.    Mr. Yeomans Is Elaborating on a Fully Exhausted Atkins Claim, Not Introducing "New Evidence." .......................................................... 7

    C.    Mr. Yeomans Is Entitled to an Evidentiary Hearing Under Section 2254(e)(2). ...................................................................... 12

II.    LOPER BRIGHT HIGHLIGHTS THAT AEDPA DEFERENCE IS INCONSISTENT WITH THE CONSITUTIONAL REQUIREMENT THAT FEDERAL JUDGES INDEPENDENTLY INTERPRET FEDERAL LAW. ..................................................................................... 14

CONCLUSION ............................................................................................................ 17

## TABLE OF AUTHORITIES

**Cases**                                                                                      **Page(s)**

*Atkins v. Virginia*,
  536 U.S. 304 (2002)...................................................................................... *passim*

*Bobby v. Bies*,
  556 U.S. 825 (2009).............................................................................................6

*Brumfield v. Cain*,
  576 U.S. 305 (2015).........................................................................................6, 11

*Calhoun v. Raybon*,
  2024 WL 4254085 (N.D. Ala. Sept. 20, 2024)..................................................5, 10

*Cooper v. Aaron*,
  358 U.S. 1 (1958)..............................................................................................16

*Ex parte Perkins*,
  851 So. 2d 453 (Ala. 2002)..................................................................................4

*Freeman v. Comm'r, Ala. Dep't of Corr.*,
  46 F.4th 1193 (11th Cir. 2022) ...........................................................................9

*Hall v. Florida*,
  572 U.S. 701 (2014)......................................................................................10, 12

*Jenkins v. Comm'r, Ala. Dep't of Corr.*,
  963 F.3d 1248 (11th Cir. 2020) ...........................................................................6

*Loper Bright Enterprises v. Raimondo*,
  603 U.S. 369 (2024)...................................................................................... *passim*

*Marbury v. Madison*,
  5 U.S. (1 Cranch) 137 (1803)...............................................................................15

*Martin v. Hunter's Lessee*,
  14 U.S. (1 Wheat.) 304 (1816)..............................................................................16

*Moore v. Texas*,
  581 U.S. 1 (2017)................................................................................4, 10, 11, 12

*Picard v. Connor*,
  404 U.S. 270 (1971)............................................................................................9

*Pope v. Sec'y for Dep't of Corr.*,
  680 F.3d 1271 (11th Cir. 2012) ...........................................................................9

*Shinn v. Kayer*,
  592 U.S. 111 (2020)...................................................................................................17

*Shinn v. Ramirez*,
  142 S. Ct. 1718 (2022)..............................................................................................12

*Stallworth v. Raybon*,
  2025 WL 223447 (S.D. Ala. Jan. 16, 2025) ..................................................... *passim*

*Williams v. Taylor*,
  529 U.S. 420 (2000)...................................................................................................12

*Wright v. Sec'y, Dep't of Corr.*,
  2021 WL 5293405 (11th Cir. Nov. 15, 2021)...............................................................4

*Yeomans v. State*,
  195 So. 3d 1018 (Ala. Crim. App. 2013)...............................................................8, 14

*Yeomans v. State*,
  898 So. 2d 878 (Ala. Crim. App. 2004)........................................................................8

*Zubik v. Burwell*,
  578 U.S. 403 (2016) (Sotomayor, J., concurring)......................................................16

**Statutes**

28 U.S.C. § 2254........................................................................................... *passim*

Administrative Procedure Act...............................................................................14, 15

Antiterrorism and Effective Death Penalty Act of 1996....................................... *passim*

**Rules**

Ala. R. Crim. P...............................................................................................2, 8, 12

**Other Authorities**

U.S. Const. amend. VIII..................................................................................7, 9, 12, 13

**INTRODUCTION**

Among the many failings in its Response Brief, the State fails entirely to address the fundamental flaw with the state courts' decisions regarding Mr. Yeomans's *Atkins* claim: the Alabama Court of Criminal Appeals decided the merits of his claim that Mr. Yeomans is intellectually disabled based on a record developed entirely before the Supreme Court decided *Atkins v. Virginia*, 536 U.S. 304 (2002). *Atkins* held that the U.S. Constitution precludes sentencing intellectually disabled persons to death, and precedent from this circuit and beyond following that decision have underscored the importance of permitting a defendant the ability to develop an appropriate record in support of a claim of intellectual disability. Yet the Alabama Court of Criminal Appeals affirmed Mr. Yeomans's sentence of death, despite significant evidence of intellectual disability, without permitting Mr. Yeomans to develop the claim under an *Atkins* standard. In so doing, the Court of Criminal Appeals unreasonably applied *Atkins* and unreasonably determined the facts.

Moreover, the Supreme Court's decision in *Loper Bright* underscores the fact that the state courts' decisions should not be given any deference when deciding whether to grant Mr. Yeomans's habeas petition.

This Court should correct the state courts' violations of Mr. Yeomans's constitutional rights by issuing a writ of habeas corpus granting Mr. Yeomans relief from his unconstitutionally-obtained sentence of death or, at a minimum, grant Mr. Yeomans an evidentiary hearing to develop his *Atkins* claim.

**ARGUMENT**

I.    **THE ALABAMA STATE COURTS UNREASONABLY DETERMINED MR. YEOMANS'S INTELLECTUAL DISABILITY ON A PRE-*ATKINS* RECORD,**

1

**RENDERING HIS SENTENCE UNCONSTITUTIONAL AND ENTITLING HIM TO AN EVIDENTIARY HEARING.**

The State obfuscates the procedural history and substantive record in this case to avoid the conclusion that the state courts unreasonably adjudicated Mr. Yeomans's claim under *Atkins*. Most glaringly, between its Answer and its supplemental brief, the State has done an about-face regarding the issue of whether Mr. Yeomans even presented his *Atkins* claim in state court. In the State's Answer to Mr. Yeomans's petition for habeas relief ("Petition"), it argued that "the Court of Criminal Appeals held that [Mr. Yeomans's *Atkins*] claim was procedurally barred under Rule 32.2(a)(4) because it was raised and addressed on direct appeal." (Dkt. 13 ¶ 33.) But in its response to Mr. Yeomans's supplemental brief, the State now claims that it "no longer advances that argument," arguing instead that the "*Atkins* claim was adjudicated on the merits in state court, and this Court should defer to the state court's decision that he is not intellectually disabled." Dkt. 48 ("Response Br.") at 14–15.

But the Court of Criminal Appeals' holding of a procedural bar was not "an argument" that the State can simply ignore by choosing to "no longer advance" that fact. Whether or not the State now wants to acknowledge it, the Court of Criminal Appeals held that Mr. Yeomans was procedurally barred from bringing his *Atkins* claim. The State's transparent effort to recast that holding is telling as it apparently now realizes that it must try to distinguish Mr. Yeomans's case from the recent decisions in this circuit granting similarly situated habeas petitioners evidentiary hearings on their *Atkins* claims after finding that the Court of Criminal Appeals unreasonably adjudicated those claims.

The State does little else in support of its effort to distinguish Mr. Yeomans's case from those cases granting *Atkins* evidentiary hearings. Instead, the State otherwise clings to the same arguments it advanced in its Answer in support of the Court of Criminal Appeals' decision—

2

mainly, that Mr. Yeomans's highest IQ scores and evidence of potential adaptive strengths alike prevent him from being classified as intellectually disabled. But the same problem plagues the State's arguments that plagued the Court of Criminal Appeals' decision. It is impermissible to focus on evidence of strengths to the exclusion of the rest of the record—including Mr. Yeomans's range of IQ scores and placement in special education classes. And this is all the more true where, as here, that record was entirely developed *before* the Supreme Court's decision in *Atkins*, meaning that Mr. Yeomans was never afforded an opportunity to develop his evidence in support of an *Atkins* claim (as opposed to simply mitigation evidence as it was prior to the decision in *Atkins*). This constitutes an unreasonable application of *Atkins* and an unreasonable determination of the facts thereunder. Just as district courts in this circuit recently did in *Stallworth* and *Calhoun*, this Court should recognize the unreasonableness of the Court of Criminal Appeals' adjudication of Mr. Yeomans's *Atkins* claim and decline to accord deference to the Alabama state courts' decisions.

### A.    The Alabama State Courts' Decisions Rested on Unreasonable Applications of Law and Unreasonable Determinations of the Facts Under *Atkins*.

Mr. Yeomans's *Atkins* claim meets the standard under 28 U.S.C. § 2254(d) permitting this Court to consider the claim de novo. The Court of Criminal Appeals' adjudication of Mr. Yeomans's *Atkins* claim was based on an unreasonable application of *Atkins* and an unreasonable determination of the facts of this case, both because its review of the evidence of Mr. Yeomans's intellectual disability was inappropriately selective and because it decided the *Atkins* claim based solely on a pre-*Atkins* factual record.

Mr. Yeomans's pre-*Atkins* record satisfies the three factors used in determining intellectual disability in Alabama courts: (1) "significantly subaverage intellectual functioning" (or, in Alabama, "an IQ of 70 or below"), (2) "significant or substantial deficits in adaptive behavior,"

3

and (3) the manifestation of these problems during the defendant's developmental period (before the age of 18). *Ex parte Perkins*, 851 So. 2d 453, 456 & n.3 (Ala. 2002). In defending the Court of Criminal Appeals' finding to the contrary, the State either minimizes the import of or completely disregards, among other things, Mr. Yeomans's *multiple* raw IQ scores below 70 (even more with the standard error measurement ("SEM") applied), his placement in special education courses for the "educable mentally retarded" throughout his development, his registration in second-grade classes when he was twelve years old, and his sister's testimony that he could not read or write. Dkt. 40 ("Pet. Br.") at 19–20; Dkt. 1 ("Pet.") at 40. That evidence satisfies the three *Perkins*/*Atkins* factors.

The State's (and Court of Criminal Appeals') focus instead on the fact that Mr. Yeomans's was able to hold (but not long maintain)[1] a series of menial jobs, married three times, and managed to father children (*see* Pet. Br. 17; Response Br. 21, 24) does nothing to change this analysis. The State does not suggest that the lower of Mr. Yeomans's IQ scores were unreliable for any reason, and as the United States Supreme Court acknowledged in *Moore v. Texas*, 581 U.S. 1, 11–16 (2017), ignoring the lower end of a petitioner's *range* of IQ scores and weighing perceived adaptive strengths against or over adaptive deficits are classic unreasonable applications of and unreasonable determinations of the facts under *Atkins*. *See also Wright v. Sec'y, Dep't of Corr.*, 2021 WL 5293405, at *3 (11th Cir. Nov. 15, 2021) ("adaptive deficits . . . are not outweighed by the potential strengths in some adaptive skills" (internal quotation marks omitted)).

*Moore*, while not a new substantive rule of law, is an illustration of how courts should apply *Atkins* to cases like Mr. Yeomans's and is therefore instructive to this Court's review. Indeed, courts in this circuit have recognized as much in granting similarly situated petitioners relief on

---

[1] *See* Pet. 25 (explaining that "Mr. Yeomans struggled to maintain employment").

4

their *Atkins* claims. *See, e.g.*, *Stallworth v. Raybon*, 2025 WL 223447, at *7–8 (S.D. Ala. Jan. 16, 2025). The recent decisions of these other Alabama district courts further evince that a death sentence imposed in the context of a record like Mr. Yeomans's is an unreasonable application of the law and unreasonable determination of the facts.

In *Stallworth v. Raybon*, the petitioner's case was on direct appeal when *Atkins* was decided. Case No. 1:15-cv-00309 (S.D. Ala. Sept. 27, 2023), Dkt. 48 ("Stallworth Hearing Order") at 4–5. Even after the Court of Criminal Appeals ordered supplemental briefing on the issue, it did not permit further factual development. *Id.* The district court recognized the unreasonableness of this holding, concluding that Stallworth's pre-*Atkins* expert evaluations were "not suited to establish Stallworth's intellectual disability," and that the Court of Criminal Appeals' application of the "post-*Atkins* standard to evidence obtained pre-*Atkins*" was improper. *Id.* at 183. In addition, the court held that Stallworth's adult work history, engagement to be married, and being a father were "good character" evidence, not "evidence that he is not intellectually disabled" in the clinical sense. *Id.* at 184. Similarly, in *Calhoun v. Raybon*, where the petitioner—also on direct appeal at the time of the *Atkins* decision—had two low IQ scores and a mix of borderline and intellectually disabled competencies, the district court held that in cases where a petitioner with mixed, underdeveloped indicia of intellectual disability is sentenced before *Atkins*, "an evidentiary hearing is even more important." 2024 WL 4254085, at *10–12 (N.D. Ala. Sept. 20, 2024).

Despite the plain relevance of these decisions to the instant case, the State does not address the overwhelming similarities between this case and *Calhoun* at all in its brief, and in response to *Stallworth* asserts merely that "the district court's decision was wrong" without even bothering to argue *why* it so contends. Response Br. 24. Such does not permit the State, nor should it convince this Court, to turn a blind eye to the tide of recent holdings in favor of Mr. Yeomans's position.

5

Nor does the decision in *Jenkins v. Comm'r, Ala. Dep't of Corr.*, 963 F.3d 1248, 1262 (11th Cir. 2020). In *Jenkins*, the petitioner's "established" IQ score was 76, *id.* at 1262, a record so different from Mr. Yeomans's that the case has no relevance to Mr. Yeomans's petition.

The State also argues that the Court of Criminal Appeals reasonably relied on pre-*Atkins* evidence to resolve Mr. Yeomans's *Atkins* claim. Response Br. 21–22. The State notes that Mr. Yeomans's trial record includes a psychologist's assessment that he was not intellectually disabled. *Id.* at 20–21. But the State omits the critical context for that assessment: The psychologist had conducted an examination to determine only Mr. Yeomans's competency to stand trial. *See* Pet. 36. Even then, the psychologist determined that Mr. Yeomans was functioning in the borderline range of intelligence. *Id.* at 38, 44. Notably, that psychologist did not undertake any intelligence testing but assessed Mr. Yeomans's fitness for trial based solely on an interview. *See id.* at 42–45.

As described below, *infra* at 9–10, and as explained in Mr. Yeomans's brief and by the United States Supreme Court, *Atkins* requires that the petitioner be assessed according to prevailing clinical standards, so a psychologist's assessment of a defendant's competency to stand trial—let alone one with scant observation and no intelligence testing—cannot constitute a proper assessment of intellectual disability for *Atkins* purposes (nor certainly overcome the weight of multiple other such tests). *See* Pet. Br. 18–21; *Atkins*, 536 U.S. at 320–21; *Brumfield v. Cain*, 576 U.S. 305, 316 (2015) ("The state court therefore could not reasonably infer from this evidence that any examination [the psychologist] had performed was sufficiently rigorous to preclude definitively the possibility that [the petitioner] possessed subaverage intelligence."); *Bobby v. Bies*, 556 U.S. 825, 829 (2009) ("[M]ental retardation for purposes of *Atkins*, and mental retardation as one mitigator to be weighed against aggravators, are discrete issues."). The Court of Criminal

6

Appeals' contrary determination was an unreasonable application of law and unreasonable determination of the facts.

Again, the Court of Criminal Appeals confronted a *pre-Atkins* record—one that included multiple raw IQ scores below 70 before the age of 18, special education placement for the intellectually disabled, and evidence of illiteracy—and found Mr. Yeomans was not intellectually disabled. But the fact that Mr. Yeomans developed *any* intellectual disability record before the Supreme Court decided *Atkins*, much less one that on its own presented a colorable *Atkins* claim, should have been more than sufficient to preclude the state court reaching that determination. Subsequently, by holding that Mr. Yeomans's *Atkins* claim was procedurally barred because it was raised and addressed on direct appeal, the Alabama Court of Criminal Appeals reinforced its unreasonable adjudication of that claim.

Because the state court unreasonably applied the law and unreasonably determined the facts, AEDPA deference is not warranted in this case. This Court should thus review de novo the unconstitutionality of Mr. Yeomans's sentence under *Atkins* and the Eighth Amendment and grant his Petition for habeas relief.

### B.    Mr. Yeomans Is Elaborating on a Fully Exhausted *Atkins* Claim, Not Introducing "New Evidence."

Having satisfied Section 2254(d)'s requirements, there are no barriers to granting Mr. Yeomans's petition for relief. Nevertheless, the State attempts to avoid that outcome by framing Mr. Yeomans's support for his Petition as unexhausted or defaulted. The State's assertion that Mr. Yeomans is "refashioning" his *Atkins* claim with "new" evidence (Response Br. 12–15) misunderstands both the record and controlling law—and is a continued attempt to whipsaw Mr. Yeomans based solely on the timing of his judgment vis-à-vis the decision in *Atkins*.

7

Mr. Yeomans has consistently asserted, since direct appeal, that he is intellectually disabled and therefore categorically and constitutionally ineligible for execution. The core factual predicate for that claim—multiple IQ scores in the disabled range, a longstanding designation as educable mentally disabled, and an assortment of adaptive-functioning deficits—was squarely presented to, and addressed by, the Alabama Court of Criminal Appeals. *Yeomans v. State*, 195 So. 3d 1018, 1041, 1040–42 (Ala. Crim. App. 2013). The present briefing does not advance a novel claim or factual theory. Rather, it applies the clinical and legal standards that *Atkins* requires to the same underlying evidence.

On direct appeal, the Alabama Court of Criminal Appeals reviewed trial evidence of Mr. Yeomans's low intellectual functioning and rejected his claim that he is exempt from execution under *Atkins*. *See Yeomans v. State*, 898 So. 2d 878, 900–02 (Ala. Crim. App. 2004). In his Rule 32 petition, Mr. Yeomans again pressed his intellectual disability claim and sought discovery and an evidentiary hearing. The Rule 32 court denied both, and the Court of Criminal Appeals affirmed, holding that the claim was barred under Rule 32.2(a)(4) because it had already been "raised on direct appeal and addressed on its merits." *Yeomans*, 195 So. 3d at 1048, 1065.

Remarkably, in its opposition, the State now concedes that "Yeomans's *Atkins* claim was adjudicated on the merits in state court" and that it "no longer advances" a procedural-default argument. Response Br. 15. However, the State simultaneously contends that Mr. Yeomans's reliance on standard error of measurement (SEM), the Flynn Effect, and updated diagnostic criteria transforms his exhausted *Atkins* claim into an unexhausted one. That position is contrary to the law as found by the Eleventh Circuit.

The Eleventh Circuit has made clear that exhaustion is satisfied "when a habeas petitioner presents the federal claim to the appropriate state court," and that remains true "despite variations

8

in the factual allegations urged in its support," as long as the state court had a meaningful opportunity to consider the substance of the federal claim. *Pope v. Sec'y for Dep't of Corr.*, 680 F.3d 1271, 1286 (11th Cir. 2012) (cleaned up) (quoting *Picard v. Connor*, 404 U.S. 270, 277–78 (1971)). Likewise, a claim is not "new" simply because the federal petition contains "new factual allegations" where the "particular legal basis and specific factual foundation" remain the same as those presented in state court. *Freeman v. Comm'r, Ala. Dep't of Corr.*, 46 F.4th 1193, 1217–19 (11th Cir. 2022) (emphasis omitted).

That is precisely the posture here. The core legal claim of intellectual disability under *Atkins*, and the core factual basis grounded in the same IQ scores, special-education history, and adaptive-functioning deficits, have been before the Alabama courts since Mr. Yeomans first raised his *Atkins* claim on direct appeal following the Supreme Court's decision. SEM, Flynn adjustments, and updated DSM criteria are the tools used to interpret that existing record today; they do not change the claim's legal basis or factual foundation. *See Atkins*, 536 U.S. at 317–18 (explaining that intellectual disability is defined by reference to clinical standards, including subaverage intellectual functioning). The State's effort to recharacterize these refinements as a "complete refashioning" (Response Br. 14) thus misses the mark and avoids the merits.

The Supreme Court has made clear that *Atkins* determinations are not static. Given the very nature of the assessment, the constitutional standard necessarily evolves with advances in clinical knowledge and diagnostic practice. To that point, the Supreme Court has emphasized that the Eighth Amendment's protection of intellectually disabled persons "draw[s] its meaning from the evolving standards of decency that mark the progress of a maturing society." *Atkins*, 536 U.S. at 311–12, 317–18 (grounding the constitutional inquiry in clinical definitions of intellectual disability). Later decisions demonstrate how those standards should be identified and

implemented. In *Hall v. Florida*, the Court found a rigid IQ cutoff at 70 to be unconstitutional because it creates an "unacceptable risk" of executing the intellectually disabled. 572 U.S. 701, 704, 723–24 (2014). The Court stressed that IQ scores must be treated as ranges, not absolutes, and that SEM is "a statistical fact" that courts are required to take into account. *Id.* at 711–14, 723–24. In *Moore v. Texas*, the Court held that state courts must consult "the medical community's *current* views and standards" when adjudicating *Atkins* claims and may not rely on outdated diagnostic guides or lay stereotypes of functioning. 581 U.S. 1, 11–12, 14–16 (2017) (emphasis added).

Under *Hall* and *Moore*, SEM, updated diagnostic criteria, and contemporary understandings of adaptive behavioral deficits are recognized as constitutionally mandated tools for determining whether an individual has an intellectual disability under *Atkins*. Petitioner's reliance on those tools does not create a new evidentiary predicate; rather, it reflects compliance with how the Supreme Court has instructed courts to apply *Atkins*. Treating the state courts' decades-old characterization of Mr. Yeomans's evidence as dispositive would thus freeze the *Atkins* inquiry in a manner the Supreme Court expressly rejected in *Hall* and *Moore*.

Additionally, both *Calhoun* and *Stallworth*, addressed *supra* at Section III.A, also underscore why the State's "new evidence" narrative fails. In *Calhoun*, after finding that the Court of Criminal Appeals unreasonably determined the facts in summarily concluding without an evidentiary hearing that Mr. Calhoun was not intellectually disabled, the district court ordered an evidentiary hearing on whether Mr. Calhoun was "ineligible for execution under *Atkins*." *Calhoun*, 2024 WL 4254085 at *1, *10–12. The district court concluded that the state court's summary rejection of the claim—based on a thin, pre-*Atkins* record—was unreasonable and that a proper

10

determination required factual development consistent with contemporary clinical standards. *Id*. at *1–2, *10–12.

Similarly, in *Stallworth*, the district court held that the Alabama Court of Criminal Appeals' rejection of Mr. Stallworth's intellectual-disability claim was "unreasonable" under 28 U.S.C. § 2254(d) and thus that it was required to conduct a de novo review of the claim. Stallworth Hearing Order at 185. The court held a full evidentiary hearing, during which Mr. Stallworth was able to present additional expert testimony and updated clinical evidence on his IQ scores and adaptive functioning. *Stallworth*, 2025 WL 223447, at **2–4. After considering both the existing state court record and the new evidence, the court granted habeas relief on Stallworth's *Atkins* claim. *Id*. at *7–8.

*Stallworth* thus illustrates two critical points that undercut the State's position here. First, a federal court may determine that a state court's *Atkins* determination based on a pre-*Atkins* state court record is unreasonable under § 2254(d). Second, once that threshold is met, the court may hear additional evidence and expert testimony, consider updated testing, and apply updated diagnostic criteria, to decide whether the petitioner is, in fact, intellectually disabled. The court in *Stallworth* properly treated that evidence as part of the constitutionally required enforcement of Supreme Court precedent from *Atkins*, *Hall*, and *Moore*, not as a "new" or unexhausted claim.

The State dismisses *Stallworth* as wrongly decided (and fails to address *Calhoun* entirely) and notes that appeal is pending, but it offers no authority suggesting that *Stallworth*'s two-step approach is improper. To the contrary, *Stallworth* mirrors the path the Supreme Court itself followed in *Brumfield v. Cain*, in first finding that the state court's refusal to grant a hearing was an "unreasonable determination of the facts," and then permitting further development of the *Atkins* claim. 576 U.S. at 315–17.

11

Ultimately, the State's insistence on branding SEM, Flynn adjustments, and updated diagnostic tools as "new evidence" flies in the face of both the record and Eighth Amendment precedent. The pertinent question is not whether Mr. Yeomans may refine how he presents his intellectual disability claim; it is whether he is intellectually disabled and thus categorically ineligible for execution. The Supreme Court has made clear that *Atkins* is a substantive constitutional bar, not a procedural technicality. *Atkins*, 536 U.S. at 321; *Hall*, 572 U.S. at 723; *Moore*, 581 U.S. at 14–16. Mr. Yeomans's current presentation simply applies that body of law and clinical standards to the same factual core that has always undergirded his claim. Mr. Yeomans's *Atkins* claim is neither new nor unexhausted and it entitles him to relief.

### C.    Mr. Yeomans Is Entitled to an Evidentiary Hearing Under Section 2254(e)(2).

Because the state court unreasonably adjudicated his *Atkins* claim under 28 U.S.C. § 2254(d), this Court may review the claim de novo. Having been unreasonably deprived of an opportunity to present evidence in the state court, Mr. Yeomans is, at a minimum, entitled to an opportunity to develop his *Atkins* claim through an evidentiary hearing because he did not fail to exercise requisite diligence to develop the record. *Id.* § 2254(e)(2).

As discussed above, *supra* at 7–8, Mr. Yeomans raised his *Atkins* claim at every stage at which it was possible for him to do so and was denied an opportunity to further develop the evidentiary record in support at every turn. *See* Pet. Br. 22–24. To be denied an evidentiary hearing under Section 2254(e)(2), there must be a "lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." *Williams v. Taylor*, 529 U.S. 420, 432 (2000). "A prisoner is at fault if he bears responsibility for the failure to develop the record." *Shinn v. Ramirez*, 142 S. Ct. 1718, 1734 (2022) (cleaned up); *see* Response Br. 28. No fault is attributable to Mr. Yeomans, who—as the State itself acknowledges—sought relief on his *Atkins* claim and was precluded from developing the record when the Rule 32 court deemed it procedurally barred. *See* Response Br.

12

28. The State avers that Mr. Yeomans exhibited a lack of diligence in developing his *Atkins* claim and, as if to support that position, notes that Mr. Yeomans requested a hearing on all of the claims in his Petition during Rule 32 proceedings. *Id.* The State thus concedes that Mr. Yeomans asked, repeatedly, for a chance to develop the record on his *Atkins* claim in state court. The fact that he never got that chance is due to no lack of diligence on his part.

Nor is the State correct that in accepting Mr. Yeomans's position, this Court would establish a "per se rule" that any and all petitioners sentenced pre-*Atkins* would be entitled to develop *Atkins* claims through an evidentiary hearing. *See* Response Br. 22–23. Not all petitioners sentenced pre-*Atkins* would have trial records with "colorable claim[s]" that their intellectual disability renders the imposition of death sentences in their cases unconstitutional. *See* Stallworth Hearing Order at 187–88. Sentencing an intellectually disabled person to death violates the Eighth Amendment. Mr. Yeomans has, at the very least, a colorable claim that he is intellectually disabled under *Atkins*, based solely on pre-*Atkins* evidence developed in support only of a mitigation argument, when there was no reason for him to develop an *Atkins*-appropriate record. As other courts in this circuit have decided, *supra* at 4–5, Mr. Yeomans should be afforded the opportunity now to fairly develop that record. A decision to the contrary would set a precedent that a state can circumvent *Atkins* by precluding the presentation of evidence that might establish intellectual disability and thus ineligibility for execution.

As in *Stallworth* and *Calhoun*, Mr. Yeomans was prevented from presenting evidence in support of his *Atkins* claim in post-conviction proceedings. As stated above, the State now purports to have changed its "argument" regarding the procedural history in this case. Instead of Mr. Yeomans's case having been procedurally defaulted (Dkt 13 ¶ 33), the State "no longer advances" that "argument" and posits, instead, that Mr. Yeomans's claim was decided on the merits in state

court. Response Br. 14–15. The State cites nothing in the record for its changed position. Nor could it, as its new stance is unfounded—but highly telling in its efforts to avoid the compelling precedent from *Stallworth* and *Calhoun*.

The Court of Criminal Appeals unequivocally *held* that Mr. Yeomans's *Atkins* claim was procedurally barred in post-conviction proceedings. *Yeomans*, 195 So. 3d at 1048, 1065 (finding *Atkins* claim was barred because it had already been "raised on direct appeal and addressed on its merits"). As such, Mr. Yeomans—like the petitioners in *Stallworth* and *Calhoun*—has been denied any opportunity to develop an evidentiary record on his *Atkins* claim. Because Mr. Yeomans's pre-*Atkins* factual record at the very least raises significant doubt as to his intellectual capacity, and presents at a minimum a "colorable claim" of intellectual disability, this Court should grant Mr. Yeomans an evidentiary hearing, and allow him to fully and fairly present his *Atkins* claim.

## II. *LOPER BRIGHT* HIGHLIGHTS THAT AEDPA DEFERENCE IS INCONSISTENT WITH THE CONSTITUTIONAL REQUIREMENT THAT FEDERAL JUDGES INDEPENDENTLY INTERPRET FEDERAL LAW.

Mr. Yeomans's entitlement to relief is further supported by the Supreme Court's decision in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024). By attempting to confine *Loper Bright* to its facts and minimizing the intrusion of AEDPA on the independence of the Federal Judiciary, the State overlooks salient legal principles that warrant this Court's consideration in resolving Mr. Yeomans's Petition and which should lead this Court to fulfill its Article III role to independently review the constitutionality of Mr. Yeomans's conviction and sentence.

The State argues that the holding in *Loper Bright* should be construed narrowly to apply to cases only where the Administrative Procedure Act (APA) is the foundation of the case or controversy. Response Br. 2–5. By construing the holding in this way, the State ignores that the *Loper Bright* majority grounded its rejection of *Chevron* in first principles of Article III, not statutory interpretation. The Court held that "Article III of the Constitution assigns to the federal

judiciary the responsibility and power to adjudicate Cases and Controversies" while "exercising independent judgment." 603 U.S. at 384–85 (quotation marks omitted). The opinion's emphasis on *Marbury v. Madison*, 5 U.S. (1 Cranch) 137 (1803), and the federal courts' "duty . . . to say what the law is" reflects a constitutional principle that extends to *all* contexts in which Congress or another branch purports to limit that judicial function—not just review of executive agency decisions. 603 U.S. at 385.

Nothing in *Loper Bright* suggests that its understanding of the federal judicial role is constrained to judicial review of executive agencies. To the contrary, both concurring opinions explicitly linked Article III's command of independent judgment to separation-of-powers constraints on Congress's ability to dictate how courts resolve constitutional questions. *See id.* at 415 (Thomas, J., concurring) ("Because the judicial power requires judges to exercise their independent judgment, the deference that *Chevron* requires contravenes Article III's mandate."); *id.* at 433 (Gorsuch, J., concurring) (similar). Those same principles apply with equal force to federal habeas proceedings, where Congress has tasked federal courts with reviewing whether state court decisions on questions of federal law violate "the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

*Loper Bright*'s reasoning acts as a guide to courts in assessing the constitutionality of other doctrines that purport to defer an Article III court's decision making authority to another entity. By arguing that the Court's reasoning related to Article III is merely "historical background," Response Br. 2 (internal quotation marks omitted), the State fails to address the role that Article III plays in interpreting AEDPA deference more generally. Even if the APA is irrelevant in understanding AEDPA, Article III is not and the *Loper Bright* decision is the most recent guidance from the Supreme Court about how to understand and apply Article III.

In support of its argument, the State points to the fact that courts around the country, including the Supreme Court, have continued to apply Section 2254(d) without questioning its constitutionality even after *Loper Bright*. It is error to conclude that the Supreme Court's silence on a constitutional issue represents endorsement of the constitutionality of a specific provision. On the contrary, the Court has indicated that a decision that does not address the merits of a specific argument should not be seen as a signal about the Court's views on that issue. *Zubik v. Burwell*, 578 U.S. 403, 410 (2016) (Sotomayor, J., concurring) (cautioning that lower courts should not use a decision as a signal about where the Court stands on the merits of a case when the holding does not reach the merits). Although some lower courts have now considered the effect of *Loper Bright* on the constitutionality of AEDPA, the Supreme Court has not yet weighed in. It is therefore inappropriate to read into the fact that the Court has not yet addressed the constitutionality of AEDPA deference when the issue has not been before the Court.

The State further contends that deference to state courts under AEDPA is different than agency deference because state courts are "competent forums for adjudicating federal constitutional issues." Response Br. 5. That argument confuses the competence of state courts to adjudicate federal questions with the supremacy of federal courts' interpretation of federal law. *See* Pet. Br. 2–6; *Cooper v. Aaron*, 358 U.S. 1, 18 (1958) ("the federal judiciary is supreme in the exposition of the law of the Constitution"). Notwithstanding the *capability* of state courts, Article III and the Supremacy Clause require that federal judges—not state judges—exercise the final authority to interpret the Constitution. *See Martin v. Hunter's Lessee*, 14 U.S. (1 Wheat.) 304, 344 (1816) (holding that "courts of the United States can, without question, revise the proceedings" of state "judicial tribunals," and "if they are found to be contrary to the constitution, may declare

16

them to be of no legal validity"). Deference that forbids federal courts from granting relief despite their own determination that a state decision contravenes the Constitution inverts that hierarchy.

The State also attempts to minimize the intrusion of AEDPA on the federal courts by contending that it does not prevent federal courts from saying what the law is but merely limits the remedies. Response Br. 8–9. As courts have construed the statute, AEDPA deference constrains the core judicial power of federal courts by prohibiting relief unless a state-court decision on a federal constitutional issue is not merely wrong but "so obviously wrong as to be beyond any possibility for fairminded disagreement." *Shinn v. Kayer*, 592 U.S. 111, 124 (2020) (internal quotation marks omitted). That standard compels federal judges to abandon their own judgment about what the Constitution requires—precisely the abdication *Loper Bright* rejected.

Because *Loper Bright* provides the most recent guidance in interpreting Article III in the context of deference standards, and because AEDPA deference as it has been applied to Mr. Yeomans's case violates Article III, the Court should decline to defer to the Alabama state court decisions in Mr. Yeomans's case and should grant Mr. Yeomans's Petition for habeas relief or, at a minimum, grant him an evidentiary hearing to fully present his arguments for the Court's consideration.

### CONCLUSION

For all of the foregoing reasons and for the reasons in his Petition and Brief in Support of Habeas Petition, Mr. Yeomans respectfully requests that the Court grant the relief sought in his Petition.

Dated: December 22, 2025                    Respectfully submitted,

 */s/ Charles K. Schafer*
Charles K. Schafer (admitted *pro hac vice*)
Emma G. Silberstein (admitted *pro hac vice*)

17

Ben Cross (admitted *pro hac vice*)
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
Telephone No. (312) 853-7000
Facsimile No. (312) 853-7036
cschafer@sidley.com
esilberstein@sidley.com
bcross@sidley.com
emma.wilfong@sidley.com

F.M. Haston, III (ASB-8858-A64F)
Jennifer Joe McGahey (ASB-7367-I28J)
BRADLEY ARANT BOULT CUMMINGS
LLP
1819 Fifth Avenue North
Birmingham, AL 35203
Telephone No. (205) 521-8000
thaston@bradley.com
jmcgahey@bradley.com

*Attorneys for Petitioner James Donald Yeomans*

18

## CERTIFICATE OF SERVICE

I hereby certify that on December 22, 2025, I electronically filed the foregoing document using the CM/ECF system, which will send notice of this filing to all counsel of record.

/s/ Jennifer J. McGahey
Jennifer J. McGahey
